# In the United States District Court for the Southern District of Georgia Savannah Division

PAMELA YOUNG,

Plaintiff,

v.

UNIFORMED CONCRETE, LLC,

Defendant.

4:25-cv-155

## ORDER

Before the Court are two motions: Defendant Uniform Concrete, LLC's motion for judgment on the pleadings, or, in the alternative, motion for summary judgment, dkt. no. 9, and *pro se* Plaintiff Pamela Young's motion for a hearing, dkt. no. 21. For the reasons set forth below, Defendant's motion, dkt. no. 9, is **DENIED**, and Plaintiff's motion, dkt. no. 21, is **DENIED as moot.**

## BACKGROUND[1]

### I. Factual Background

This is an employment action by Plaintiff against her purported former employer, Defendant Uniformed Concrete, LLC. See

[1] At this stage, the Court will "accept as true all material facts alleged in the non-moving party's pleading" and "view those facts in the light most favorable to the non-moving party." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) (citation omitted).

generally, Dkt. Nos. 1, 7. Defendant is a limited liability company located in Garden City, Georgia. Dkt. No. 1 ¶ 2; Dkt. No. 7-1 at 8 ¶ 2, 26 ¶ 2. According to Plaintiff's *pro se* consolidated complaints, Dean Uccardi is the company owner and Joseph Uccardi is the general manager. Dkt. No. 7-1 at 9 ¶¶ 7, 9

Plaintiff alleges that she applied to Defendant for a truck driving position around December 2023. Dkt. No. 1 ¶ 7. Plaintiff allegedly heard about this position after telling someone connected to Defendant that she held a commercial driver's license and was looking for local driving work. Dkt. No. 7-1 at 9 ¶ 7. Shortly thereafter, Plaintiff allegedly interviewed for a position with Defendant's general manager, Joseph Uccardi. Dkt. No. 1 ¶¶ 7–8; Dkt. No. 7-1 at 9 ¶¶ 7–8. During this interview, Mr. Uccardi allegedly offered Plaintiff a starting wage of twenty dollars per hour with a raise amounting to twenty-five dollars per hour after ninety days and successful completion of certain training. Dkt. No. 7-1 at 9 ¶ 8. Plaintiff agreed to begin onboarding and was told to report on January 22, 2024. Id. at 9 ¶ 10.

Plaintiff then allegedly began pre-employment onboarding on January 22, 2024 "including completion of paperwork, background checks, and submission of a drug screening." Dkt. No. 1 ¶ 10. During this onboarding period, Plaintiff was assigned to ride along with Don Smith, one of Defendant's lead drivers. Id. ¶ 11. Plaintiff rode with Smith to job sites from January 22 through

January 24, 2024, "observing and participating in [the] delivery of concrete products." Dkt. No. 7-1 at 9 ¶ 11.

During Plaintiff's ride-along with Smith, Smith allegedly engaged in "inappropriate sexual conduct, including sexually explicit comments, suggestions of a romantic and sexual nature, and unwelcome advances." Dkt. No. 1 ¶ 12-13; Dkt. No. 7-1 at 9-10 ¶ 12. In response, Plaintiff reportedly declined the advances and expressed discomfort, and at one point she put her hands up and said: "Stop. That is entirely inappropriate." Dkt. No. 1 ¶ 14; Dkt. No. 7-1 at 9-10 ¶ 12.

After the ride-along with Smith, Plaintiff allegedly reported the harassment to "Mr. Uccardi" though it is not clear to which Mr. Uccardi she is referring. Dkt. No. 1 ¶ 15; Dkt. No. 7-1 at 10 ¶¶ 13, 16. Despite this report, Plaintiff alleges that no investigation or corrective actions were taken. Dkt. No. 1 ¶ 16; Dkt. No. 7-1 at 10 ¶ 16. Additionally, on January 24, 2024, someone speaking on behalf of Defendant informed Plaintiff that she would be driving trucks across state lines starting the next day. Dkt. No. 7-1 at 10 ¶ 14. Plaintiff allegedly expressed concern that she was not properly insured or cleared to drive for the company, and someone reportedly dismissed her concerns, stating: "We don't worry about that here." Id.

Plaintiff claims that she was not properly compensated for this training time or "placed on payroll despite fulfilling job-

related duties." Dkt. No. 1 ¶ 17. Plaintiff claims that Defendant denied that she was an employee "despite records showing job offers, communications, drug screening, and training assignments." Id. ¶ 18. Plaintiff also claims that she was not paid for the three days that she "worked and trained" with Smith, "despite completing deliveries and performing job functions." Dkt. No. 7-1 at 10 ¶ 17. When Plaintiff asked someone with Defendant about her pay for this work, she was told that "her wages were withheld because the company paid for her drug testing and lab work." Id. at 10 ¶ 18. Due to this, Plaintiff claims that she was "constructively discharged" and further claims that Defendant's "failure to act created a retaliatory environment and further[ed] the emotional and financial harm suffered by Plaintiff." Dkt. No. 1 ¶¶ 19-20; Dkt. No. 7-1 at 10 ¶ 20.

Defendant admits that it requested that Plaintiff complete pre-employment paperwork, that Plaintiff did so on January 22, 2024, and that Plaintiff passed a drug test. Dkt. No. 7-1 at 27 ¶¶ 7, 17; Dkt. No. 4 ¶ 9. Defendant also admits that on or about January 22, 2024, Plaintiff "shadowed" Smith. Dkt. No. 7-1 at 27 ¶ 11. Defendant denies all other factual allegations in Plaintiff's consolidated complaints. Dkt. No. 7-1 at 27-28 ¶¶ 7-20; Dkt. No. 4 ¶¶ 7-20.

## II. Procedural Background

### A. Prior Equal Employment Opportunity Action

Plaintiff alleges that she previously filed an action with the Equal Employment Opportunity Commission ("EEOC") which was assigned charge number 415-2024-01489. Dkt. No. 1 ¶ 5; Dkt. No. 7-1 at 8 ¶ 5. According to Plaintiff, the EEOC issued a "Dismissal and Notice of Rights" on April 1 or April 9, 2025, which allowed Plaintiff to file suit within ninety days. Dkt. No. 1 ¶ 6; Dkt. No. 7-1 ¶ 6.

### B. The Present Action

Plaintiff filed a *pro se* complaint in this Court on June 27, 2025. Dkt. No. 1. Her initial complaint contained two counts: "Sexual Harassment in Violation of Title VII" (Count I) and "Retaliation in Violation of Title VII" (Count II). Id. ¶¶ 21-29. In the jurisdictional section of her complaint, Plaintiff cites Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, as the basis for her claims. Id. ¶ 3. Plaintiff seeks back pay; front pay for the period of time she was without employment; compensatory damages for pain, suffering and emotional distress; punitive damages; attorney's fees and costs; pre-judgment and post-judgment interest; and any other relief deemed proper by the Court. Id. ¶ 30. Defendant filed an answer to this complaint on August 22, 2025. Dkt. No. 4.

On the same day she filed her initial complaint in the instant action, Plaintiff also filed a *pro se* complaint in the Superior Court of Chatham County, Georgia, which Defendant timely removed to this Court on July 31, 2025 ("Young I"). Dkt. No. 7-1 at 1–2; Young I, No. 4:25-cv-179, Dkt. No. 1. Defendant filed an answer to that complaint. Dkt. No. 7-1 at 21–33; Young I, No. 4:25-cv-179, Dkt. No. 2. Plaintiff's Young I complaint contains three counts, "Sexual Harassment in Violation of Title VII" (Count I), "Retaliation in Violation of Title VII" (Count II), and "Unpaid Wages in Violation of the FLSA" (Count III). Dkt. No. 7-1 at 10–11 ¶¶ 21–33. Plaintiff seeks the same categories of damages in Young I as in her initial complaint. Compare Dkt. No. 7-1 at 12 with Dkt. No. 1 ¶ 30.

The parties jointly moved to consolidate Young I and the instant action, and the Court granted the motion for consolidation. Dkt. No. 7-11 at 1–6; Dkt. No. 7-12 at 1–3. Because Counts I and II in Young I are substantively identical to the first two counts in the initial complaint, the counts are consolidated as the following: "Sexual Harassment in Violation of Title VII" (Count I) and "Retaliation in Violation of Title VII" (Count II). Dkt. No. 7-1 at 11 ¶¶ 21–28; Dkt. No. 1 ¶¶ 21–29. Count III, "Unpaid Wages in Violation of the FLSA," appears solely in the complaint filed in Young I and is now referred to as Count III of the consolidated complaint. Dkt. No. 7-1 at 11 ¶¶ 29–33.

On October 31, 2025, Defendant filed a motion for judgment on the pleadings, or in the alternative, a motion for summary judgment. Dkt. No. 9. On January 27, 2026, Plaintiff filed an untimely response to Defendant's motion. Dkt. No. 15; see also S.D. Ga. L.R. 7.5 (requiring a party opposing a motion for summary judgment to serve and file a response within twenty-one days of the motion).[2] Defendant filed a reply in support of its motion. Dkt. No. 17. Plaintiff has since moved for a hearing on the pending motion. Dkt. No. 21.

**LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In construing such a motion, the Court will "accept as true all material facts alleged in the non-moving party's pleading" and "view those facts in the light most favorable to the non-moving party." Perez, 774 F.3d at 1335 (citation omitted). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be

[2] Plaintiff's reply did not make substantive arguments in response to Defendant's motion but rather generally states Plaintiff's disagreement with the motion. See Dkt. No. 15. The Court considers this response, though it was out of time, as it demonstrates a general opposition to the entry of judgment in favor of Defendant. See Cocke v. United States, No. 4:19-CV-169, 2026 WL 713991, at *1 n.1 (S.D. Ga. Mar. 13, 2026) (stating that Local Rule 7.5 "does not mandate that untimely response be disregarded and instead grants the Court discretion over whether to consider a late response").

denied." Id. (citation omitted). On a motion for judgment on the pleadings, the burden of persuasion falls on the moving party. See Greenberry Indus., LLC v. ESI, Inc. of Tenn., No. 1:22-CV-206-TWT, 2022 WL 17584421, at *4 (N.D. Ga. Dec. 12, 2022) (noting that "the burden on a motion for judgment on the pleadings falls on the movant"); Levitt v. Merck & Co., Inc., 914 F.3d 1169, 1171 (8th Cir. 2019).

"The ultimate question on a motion for judgment on the pleadings under Rule 12(c) is the same as on a motion to dismiss under Rule 12(b)(6)—whether the complaint states a claim for relief." Powers v. Sec'y, U.S. Homeland Sec., 846 F. App'x 754, 757 (11th Cir. 2021) (citation omitted). To state a claim showing that the pleader is entitled to relief, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is plausible on its face when the alleged facts allow the Court to draw the "reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Additionally, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (per curiam) (quoting Roe

v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

Defendant moves, alternatively, for summary judgment. Dkt. No. 9 at 1. Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248). The Court must view all facts in the light most favorable to the non-moving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The movant must show the Court that there is an absence of evidence to support the nonmovant's case. See id. at 325. If the movant discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257.

When a complaint is filed *pro se*, the Court must liberally construe the complaint, holding the *pro se* party to "a less

stringent standard than a pleading drafted by an attorney." Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015); see also Lapinski v. St. Croix Condo. Ass'n, Inc., 815 F. App'x 496, 497 (11th Cir. 2020). However, the pleading still must include enough factual allegations to "raise a right to relief above the speculative level." Saunders v. Duke, 766 F.3d 1262, 1266 (11th Cir. 2014) (quoting Twombly, 550 U.S. at 555).

## DISCUSSION

Defendant moves for judgment on the pleadings, or alternatively, for summary judgment, by arguing that: (1) Defendant did not employ enough employees to be considered an "employer" under Title VII and (2) Plaintiff was not an employee under the Fair Labor Standards Act ("FLSA"). See Dkt. No. 9 at 5–14. Before evaluating each argument, however, the Court first discusses whether a summary judgment motion is appropriate at this stage.

### I. Defendant's motion for summary judgment is premature.

Under Federal Rule of Civil Procedure 56(b), a party may move for summary judgment "at any time until 30 days after the close of all discovery." "There is no 'blanket prohibition on the granting of summary judgment motions before discovery' has occurred." Est. of Todashev by Shibly v. United States, 815 F. App'x 446, 450 (11th Cir. 2020) (quoting Reflectone, Inc. v. Farrand Optical Co., 862 F.2d 841, 843 (11th Cir. 1989) (per curiam)). But "[a]s a general

rule summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery." Reflectone, Inc., 862 F.2d at 843.

Here, while Plaintiff has not specifically made a motion under Rule 56(d) that additional discovery would be beneficial, her response indicates that she "do[es] not agree with this motion" and wishes for "this matter to be heard in a judge's court." Dkt. No. 15 at 1. Discovery in this case is presently stayed pending a resolution of Defendant's motion. Dkt. No. 13 at 1. And, as described more fully below, Plaintiff "has alleged a reasonable basis from which to infer that a genuine issue of material fact that would defeat summary judgment could be the result of additional discovery." Caplan v. Raybar, Inc., No. 22-22426-CIV, 2023 WL 6196954, at *2 (S.D. Fla. Sept. 22, 2023) (quoting Arch Ins. Co. v. VAS Aero Servs., LLC, No. 16-80749-CIV, 2017 WL 7731224, at *1 (S.D. Fla. Mar. 13, 2017)).

Therefore, Defendant's motion for summary judgment is premature at this time. The motion for summary judgment is **DENIED** without prejudice to renewing the motion once discovery has taken place.

## II. Counts I and II: Plaintiff's Claims under Title VII

Counts I and II of Plaintiff's complaint both arise under Title VII: "Sexual Harassment in Violation of Title VII" (Count I) and "Retaliation in Violation of Title VII" (Count II). Dkt. No.

7-1 at 11 ¶¶ 21–28; Dkt. No. 1 ¶¶ 21–29. Defendant argues that these counts fail because Defendant did not employ enough employees in the relevant time period to fall under the definition of an "employer" under Title VII. Dkt. No. 9 at 5–11. Specifically, Defendant argues that two groups of people who appear on the provided payroll records should not be counted as "employees:" (1) Defendant's purported owners, Dean and Joseph Uccardi, and (2) Dean Uccardi's minor children. Id.

Under Title VII, it is unlawful for an employer to discriminate against an individual on the basis of a protected characteristic and to retaliate against an employee because he or she opposed a practice made unlawful buy Title VII. 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a); see also Patterson v. Ga. Pac., LLC, 38 F.4th 1336, 1346 (11th Cir. 2022). Within the statute, an "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]" 42 U.S.C. § 2000e(b). For purposes of the statute, the "current year" is the year of the alleged unlawful employment action and the preceding year is the year prior to the unlawful employment action. See Walters v. Metro. Educ. Enters., Inc., 519 U.S. 202, 205 (1997). It is Plaintiff's burden to show the threshold number of employees under the statute. Bouey v. Orange Cnty. Serv. Unit, 673 F. App'x 952, 954 (11th Cir. 2016)

(citing Arbaugh v. Y&H Corp., 546 U.S. 500, 516 (2006)). To determine whether a person was an employee, courts look "first and primarily to whether the individual in question appears on the employer's payroll." Id. (quoting Walters, 519 U.S. at 211).

As part of its present motion, Defendant has provided payroll records for each week in 2023 and 2024 alongside three documents: sworn declarations prepared by Dean and Joseph Uccardi and Defendant's purported LLC operating agreement. Dkt. Nos. 9-1, 9-2, 9-3, 9-4, 9-5. Defendant argues that these documents show that Defendant did not have enough employees in the relevant years to be considered an employer under Title VII. Dkt. No. 9 at 5–11. The Court first determines whether these documents may be considered at this stage before addressing Defendant's substantive arguments.

**A. The Court may not consider the attached Uccardi declarations and LLC operating agreement at this time.**

Because the declarations, operating agreement, and payroll records were not attached to the complaint, the Court may consider these documents within the present motion for judgment on the pleadings only if the documents are (1) central to Plaintiff's complaint and (2) the authenticity of the documents is not challenged. Johnson v. City of Atlanta, 107 F.4th 1292, 1300 (11th Cir. 2024); Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). Plaintiff, in her response, does not dispute the authenticity of the documents. See generally, Dkt. No. 15. Therefore, the Court

may consider these documents only if they are central to Plaintiff's complaint. Johnson, 107 F.4th at 1300.

Here, the payroll records, dkt. nos. 9-4, 9-5, can be considered central to Plaintiff's claims because the number of employees employed by Defendant in the relevant years must be proved by Plaintiff for her claims to succeed on her Title VII action, and payroll records are generally looked to "first and primarily" when answering this question. Bouey, 673 F. App'x at 954 (citing Walters, 519 U.S. at 202). The declarations and operating agreement, dkt. nos. 9-1, 9-2, 9-3, however, are not "central" to Plaintiff's claims, as they do not comprise a necessary part of Plaintiff's claim. Kalpakchian v. Bank of Am. Corp., 832 F. App'x 579, 583 (11th Cir. 2020) ("A document, by definition, is central to a complaint when it is 'a necessary part of a plaintiff's effort to make out a claim.'" (alterations adopted) (quoting Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005))). Moreover, "[a] document is not 'central' merely because it is directly responsive to a factual allegation." Adamson v. Poorter, No. 06-15941, 2007 WL 2900576, at *3 (11th Cir. Oct. 4, 2007). Therefore, the Court considers the payroll documents, dkt. nos. 9-4, 9-5, but not the declarations or operating agreement, dkt. nos. 9-1, 9-2, 9-3, when evaluating Defendant's motion for judgment on the pleadings.

**B. Plaintiff has plausibly alleged that Defendant was an employer under Title VII.**

As reflected in the payroll records, there were sixty-one total weeks where Defendant employed fifteen or more employees: eighteen weeks in 2023, and forty-three weeks in 2024. Dkt. Nos. 9-4, 9-5; see also 42 U.S.C. § 2000e(b) (requiring, for Title VII applicability, fifteen or more employees for each of twenty or more calendar weeks in the current or preceding calendar year). Dean and Joseph Uccardi appear in each week of the provided payroll records. Id. Dean Uccardi's minor daughters, Olivia and Isabella Uccardi, appear in the payroll records for a total of ninety-seven consecutive weeks, beginning on February 25, 2023. Dkt. Nos. 9-4, 9-5. Defendant argues that Dean and Joseph Uccardi should not count towards the employee number because they are "owners," and the minor children should not count toward the Title VII employee threshold because they did not perform work for the company. Dkt. No. 9 at 8–11.

In Walters, the Supreme Court stated that "the existence of an employment relationship, not appearance on the payroll" was "ultimately critical" in evaluating whether an employer employed a certain number of employees under Title VII. 519 U.S. at 211. In a different case analyzing a nearly identical numerosity requirement of a similar federal statute, the Supreme Court found that six factors were relevant in determining whether a shareholder

was an "employee," including "[w]hether the individual reports to someone higher in the organization" and "[w]hether and, if so, to what extent the individual is able to influence the organization." Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 450-51 (2003).

Here, Plaintiff alleges in her complaint that Dean Uccardi was "the company owner." Dkt. No. 7-1 at 9 ¶¶ 7, 9. Therefore, even viewing the allegations in the light most favorable to Plaintiff, Dean Uccardi was an owner, not an employee. Perez, 774 F.3d at 1335 (noting that, in a motion for judgment on the pleadings, the Court will "accept as true all material facts alleged in the non-moving party's pleading" and "view those facts in the light most favorable to the non-moving party" (citation omitted)). When omitting Dean Uccardi from the payroll records, there were five weeks in 2023 and thirty-four weeks in 2024 where the records show that Defendant employed fifteen or more employees. Dkt. Nos. 9-4 and 9-5; 42 U.S.C. § 2000e(b) (defining "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year"). Next, it is necessary to assess whether Plaintiff has alleged Joesph, Olivia, and Isabella were employees.

With respect to Joseph Uccardi, Plaintiff alleges he was a "General Manager," and did not describe him as an "owner" like

Dean Uccardi. Dkt. No. 7-1 at 9 ¶¶ 7, 9. Additionally, Plaintiff alleges that Joseph Uccardi told her that Dean Uccardi would "approve" an insurance start date offered by Joseph, indicating that Joseph may not have had the final say in management matters. Id. at 9 ¶ 9; see also Clackamas, 538 U.S. at 450-51 (listing the question of "[w]hether and, if so, to what extent the individual is able to influence the organization" as relevant in determining whether an individual was an employee). Therefore, drawing reasonable inferences in Plaintiff's favor, Plaintiff has plausibly alleged that Joseph Uccardi was Defendant's employee rather than Defendant's owner.

As to Olivia and Isabella, their presence on the payroll records, is, at this juncture and for purposes of evaluating the present motion, sufficient to allow the Court to draw the reasonable inference that they were Defendant's employees. See Dkt. No. 9-4, 9-5; Bouey, 673 F. App'x at 954 ("For purposes of determining the existence of an employment relationship, we 'look first and primarily to whether the individual in question appears on the employer's payroll.'" (quoting Walters, 519 U.S. at 211)). As found, supra, the payroll records are properly incorporated by reference into Plaintiff's consolidated complaints and considered when analyzing the present motion for judgment on the pleadings because the authenticity of the records is undisputed and the records are central to Plaintiff's complaint. See Johnson, 107

F.4th at 1300. Plaintiff also alleges that Defendant employed enough employees during the relevant time to be liable under Title VII. Dkt. No. 7-1 at 8 ¶ 2. These allegations, together, create the reasonable inference that Olivia and Isabella were Defendant's employees during the relevant time period.

Because discovery is necessary to determine whether Joseph, Olivia, and Isabella Uccardi were employees of Defendant during the relevant time period, there exists a material dispute of fact, and Defendant's motion for judgment on the pleadings as to Counts I and II is **DENIED**. See Perez, 774 F.3d at 1335 ("If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." (citation omitted)).

**III. Count III: Plaintiff's Claim under the FLSA**

In Count III of the consolidated complaint, Plaintiff asserts a cause of action for "Unpaid Wages in Violation of the FLSA." Dkt. No. 7-1 at 11 ¶¶ 29–33. Defendant argues that Plaintiff's FLSA claim must be dismissed because Plaintiff has not adequately pleaded that she worked compensable time during the alleged misconduct. Dkt. No. 9 at 11–14. Specifically, Defendant argues that the ride-along that Plaintiff allegedly completed with Smith was more properly considered non-compensable training time. Id.

The FLSA defines activities that are not compensable as including "activities which are preliminary to or postliminary to

said principal activity or activities." 29 U.S.C. § 254(a). This definition applies "when an activity before or after the principal work activity is not an 'integral and indispensable part of the principal activities for which covered workmen are employed[.]'" Bonilla v. Baker Concrete Const., Inc., 487 F.3d 1340, 1344 (11th Cir. 2007) (quoting Steiner v. Mitchell, 350 U.S. 247, 256 (1956)). Essentially, for an activity to be "integral and indispensable," the Eleventh Circuit has held that the work must be "work in the benefit of the employer." Bonilla, 487 F.3d at 1345. In Alvarez v. APLM Services, heavily relied on by Defendant, the Court found that a worker was not engaged in compensable time under the FLSA when the disputed activity was a "preliminary training which was not directly related to his job, outside his regular working hours while not performing productive work." No. CV421-119, 2022 WL 19001973, at *10 (S.D. Ga. Nov. 30, 2022), report and recommendation adopted by 2023 WL 2087970 (Feb. 17, 2023).

This being so, Plaintiff has stated sufficient facts to allege the ride-along time she spent with Smith was compensable time. Plaintiff alleges that, during the ride-along, she "rode with Smith to job sites" and observed and participated in the delivery of Defendant's concrete products. Dkt. No. 7-1 at 9–10 ¶¶ 11, 17. This is distinct from the safety training at issue in Alvarez, which would have merely "incidentally improved [the plaintiff's] regular work skills," because here Plaintiff was hired to be a

driver for Defendant, and the Court may reasonably infer that her training as a driver was directly related to her prospective job. See Alvarez, 2022 WL 19001973, at *10; Dkt. No. 7-1 at 9-10 ¶¶ 7-20.

Therefore, at this stage, Plaintiff has sufficiently alleged that she was engaged in compensable time, and there exists a material dispute of fact as to that issue. Thus, Defendant's motion for judgment on the pleadings is **DENIED** as to Count III. See Perez, 774 F.3d at 1335 ("If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." (citation omitted)).

**CONCLUSION**

It may well be that discovery will generate undisputed evidence showing that Defendant is entitled to judgment. It may not. For the reasons set forth in this Order, Defendant's motion for judgment on the pleadings, or alternatively, summary judgment, dkt. no. 9, is **DENIED**. Plaintiff's motion for a hearing, dkt. no. 21, is **DENIED as moot.**

**SO ORDERED** this 28th day of September, 2026.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA